UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ROBERT SPEARS,

    Plaintiff,

v.

PAUL ADAMSON,

    Defendant.

3:04-CV-00087-LRH-RAM

ORDER

Presently before the court is Plaintiff Robert Spears' Motion for a New Trial Based on Judicial Misconduct (#233[1]). Defendant Paul Adamson has filed a response (#235) to which Plaintiff replied (#236).

At its core, this is a civil rights dispute involving alleged misconduct committed by Defendant, an officer with the Reno Police Department, against Plaintiff, a bystander, in the course of the pursuit by police of several fleeing suspects. From April 7, 2009, through April 10, 2009, a jury trial was held before this court. The issue before the jury was limited to the question of whether, in searching Plaintiff, Defendant exceeded the scope of a reasonable pat search in violation of the Fourth Amendment to the United States Constitution. The jury returned a verdict in favor of Defendant (#224), and the court entered judgment accordingly (#231). Defendant now

---

[1]Refers to the court's docket entry number.

seeks a new trial pursuant to Federal Rule of Civil Procedure 59.

**I.     Legal Standard**

Federal Rule of Civil Procedure 59(a)(1) provides, "The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows: . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). As evidenced by the rule's text, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations and internal quotation marks omitted).

Misconduct by a trial judge may provide grounds for a new trial. "Litigants are entitled to a trial before a judge who is detached, fair and impartial." *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986) (citation omitted). The trial judge "must be ever mindful of the sensitive role the court plays in a jury trial and avoid even the appearance of advocacy or partiality." *Duckett v. Godinez*, 67 F.3d 734, 739 (9th Cir. 1995) (citation omitted). Thus, "[a] trial court commits reversible error when it expresses its opinion on an ultimate issue of fact in front of the jury or it argues for one of the parties." *Shad*, 799 F.2d at 531.

However, the role of the trial judge is not merely that of an umpire. *Duckett*, 67 F.3d at 739 (citation omitted). The trial judge may take part in the trial where necessary to clarify an evidentiary issue to the jury, call attention to evidence it believes is important, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition. *See id.* (citations omitted); *Shad*, 799 F.2d at 531 (citations omitted).

"Very few cases outside of the criminal law area support . . . [a] finding of general judicial misconduct during trial." *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1289 (9th Cir. 1984).

2

For a claim of judicial misconduct to warrant a new trial, the district court's conduct must have rendered the trial unfair. *Id.* Thus, the standard for reversing a verdict because of judicial misconduct is rather stringent, and to justify a new trial, the judge's participation in the trial must demonstrate actual judicial bias or leave an "abiding impression that the judge's remarks . . . projected to the jury an appearance of advocacy or partiality." *Shad*, 799 F.2d at 531 (citation omitted).

**II.    Discussion**

In the motion for a new trial, Plaintiff has accused the court of judicial misconduct in the following respects: (1) making erroneous rulings and acting inappropriately during closing argument; (2) improperly commenting on the evidence; (3) improperly limiting Plaintiff counsel's questioning of witnesses; and (4) making inappropriate statements to counsel after the verdict had been rendered. The court will address each of Plaintiff's allegations below.

However, before the court begins its discussion it notes that throughout his motion, Plaintiff inaccurately characterizes the court's statements and conduct. Although Plaintiff purports to quote the court, Plaintiff has failed entirely to provide a single citation to the trial transcript. Indeed, upon review of the trial transcript and the alleged statements quoted in Plaintiff's motion, it is clear that Plaintiff has not only mischaracterized the court's statements and conduct, but has also made no attempt to verify the accuracy of accusations contained therein.[2]

---

[2] In relevant part, Federal Rule of Civil Procedure 11 provides, "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11.

Significantly here, on April 13, 2009, before filing the motion for a new trial, Plaintiff's counsel requested from the court reporter partial transcripts of the objections and rulings made by the court at closing argument and the comments made to the jurors when they were discharged on April 10, 2009. The court reporter produced an expedited copy of the transcripts and made the transcripts available the same day. Plaintiff's counsel was personally notified that the requested transcripts were ready. (Tr. Invoice (#242).) However, Plaintiff's counsel then failed to pick up the transcripts and proceeded to file the motion for a new

3

### A.  Closing Argument

In requesting a new trial, Plaintiff focuses largely on the court's conduct during closing argument.  In particular, Plaintiff challenges the court's rulings regarding the content of his counsel's closing argument and the court's conduct in making such rulings.  Plaintiff also challenges the court's rulings with regard to defense counsel's closing argument.  The court will address each of these issues in turn.

#### 1.  The Content of Plaintiff's Counsel's Closing Argument

Plaintiff takes issue with the court's refusal to allow his counsel to discuss two topics during her closing argument.  First, Plaintiff challenges the court's refusal to permit his counsel to discuss a conversation she had with Plaintiff before trial.  Defense counsel objected immediately after Plaintiff's counsel stated, "People need to stand up for their rights.  [Plaintiff] is fighting for his rights, and he's here for a very important principle.  He told me when I took this case years and years ago . . . ."  (Trial Tr. (#239) at 19:7-11, April 9, 2009.)  The court sustained the objection on the grounds that Plaintiff's counsel was attempting to argue evidence that had not been admitted at trial.  After the court sustained the objection, Plaintiff's counsel stated, "This is argument, Your Honor."  (*Id.* at 19:15-16.)  The court then responded, "Either way it's not evidence.  It's not appropriate to argue about something that occurred that was not presented to this jury in the course of the testimony."  (*Id.* at 19:17-19.)

Second, Plaintiff challenges the court's refusal to permit his counsel to discuss during closing argument the statement of a prospective juror during jury selection.  Again, defense counsel objected immediately after Plaintiff's counsel stated, "And you remember the potential juror who didn't make it onto the jury, Mr. Keller I think his name was.  He told - - in questioning, he volunteered and said that a police officer had mistreat[ed] him and . . . ."  (Trial Tr. (#239) at

---

trial three days later without first verifying the accuracy of the statements and conduct she attributes to the court.

4

18:22-25, April 9, 2009.)  The court sustained the objection, stating, "Ladies and gentlemen, that comment by another juror in the course of examination definitely was not evidence in this case and should not be considered by you in any way."  (*Id.* at 19:3-6.)

A presiding judge has broad discretion to limit the duration and scope of closing arguments. *Herring v. New York*, 422 U.S. 853, 862 (1975).  As such, the trial judge may place time limits on counsel's arguments, terminate argument when continuation would be repetitive or redundant, and ensure the argument "does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial."  *Id.*  (citations omitted).

It is well-settled that the content of a closing argument cannot exceed the scope of the evidence admitted at trial.  *See, e.g., United States v. Barron*, 575 F.2d 752, 758 (9th Cir. 1978). Plaintiff does not dispute that during the course of the trial no evidence relating to the conversation he had with Plaintiff's counsel or the prospective juror's statements were admitted.   While counsel is permitted to make reasonable inferences from admitted evidence, *United States v. Marques*, 600 F.2d 742, 749 (9th Cir. 1979), in this case, nothing in the record at trial bears any relationship to the topics Plaintiff's counsel sought to argue in her closing statement.

Indeed, Plaintiff argues his counsel's reference to the conversation was not intended as a reference to external evidence, but instead likens the reference to a "[q]uote from the Bible, parables, allegories, poetry, Shakespeare, and outside events."  (Pl.'s Mot. New Trial (#233) at 2.) Plaintiff states his counsel intended to use the conversation as a "homey story about how . . . she had assured the black Mr. Spears that, even though the jury would likely be all white, they would hear him out and be fair.  It was an attempt to exhort the jury to be fair in consideration of the case."  (*Id.* at 2.)  Similarly, Plaintiff argues his counsel's reference to the statement of a prospective juror during voir dire was intended to demonstrate that the case was about "principle and personal integrity" and likens the reference to a reference to a recent movie, popular book, or historical figure.  (*Id.* at 2-3.)

Counsel is not entitled as a matter of right to introduce in closing argument any subject matter he or she sees fit. Recognizing the broad latitude afforded to the trial court judge in controlling the scope of closing argument, the Ninth Circuit has upheld a trial judge's refusal to permit counsel to use anecdotes and make analogies to well-known cases during closing argument. *See United States v. Spillone*, 879 F.2d 514, 518 (9th Cir. 1989) ("It is not an abuse of discretion to require counsel to confine his remarks to the record . . . ."). Similarly, here it was well within the court's discretion to limit the scope of Plaintiff's counsel's closing argument to minimize juror confusion and to compel Plaintiff's counsel to concentrate on the relevant evidence.[3]

Further, Plaintiff has failed to demonstrate how the court's refusal to permit Plaintiff's counsel to discuss these topics in closing argument was in anyway prejudicial to his case. Upon the court's ruling sustaining defense counsel's objections, Plaintiff's counsel failed to request a sidebar to alert the court to the purpose for which she sought to introduce the extrajudicial statements. Moreover, the court's rulings in no way prohibited Plaintiff's counsel from making her intended points regarding principles and fairness without referring to the specific instances she cited.

**2.   The Court's Conduct During Plaintiff's Counsel's Closing Argument**

Plaintiff also challenges the court's reaction to the above-discussed statements. Again mischaracterizing and exaggerating what occurred, Plaintiff states, "The worst conduct occurred during [Plaintiff's counsel's] closing argument, immediately before the case was given to the jury, where the judge yelled at [Plaintiff's counsel] in a manner so antagonistic it could not help but demonstrate his extreme dislike for her case, her position, her skill, and her legal arguments." (Pl.'s Mot. New Trial (#233) at 1.) Plaintiff continues, "Rather than simply sustain the objection or order a sidebar, the judge loudly rebuked counsel in the loud nagging tone of an exasperated parent

---

[3]The court also notes that, contrary to Plaintiff's counsel's representation, extrajudicial statements made by parties directly related to the case before the court and not introduced in evidence do not fall within the same category as parables, poetry, allegories, and statements of cultural or historical significance.

chastising a misbehaving child." (*Id.* at 2.) In particular, Plaintiff contends that in response to his counsel's attempts to discuss her conversation with Plaintiff, the judge stated, "[Plaintiff's counsel] haven't you learned anything from anything I have said?! Your conduct is sanctionable and egregious, and I will not tolerate such conduct from you in this courtroom, and if there is any further repeat of your conduct your closing argument will be finished!" (*Id.* at 3.) Plaintiff argues this alleged conduct caused "extreme prejudice" because it occurred during closing argument, immediately before the jury began deliberations.[4] (*Id.*)

      Consistent with the general lack of citation throughout the motion, Plaintiff has failed to cite to any portion of the transcript in support of his allegations. A review of the transcript indicates that immediately after the court sustained both of defense counsel's objections, Plaintiff's counsel ignored the court's rulings and continued to argue the content of her conversation with Plaintiff. Defense counsel objected immediately. The court replied, "[Plaintiff's counsel] didn't you hear what I said?" (Trial Tr. (#239) at 19:25-20:1, April 9, 2009.) Plaintiff's counsel acknowledged that she had heard the court's ruling. The court then admonished counsel, "If you heard me, you weren't listening. Your argument must go . . . to another subject, or it's going to be terminated right now."[5] (*Id.* at 20:3-7.)

      "Comments by the court which reflect unfavorably on counsel's conduct at trial are not prejudicial unless of a serious nature." *Shad*, 799 F.2d at 531 (citation omitted). Thus, even where a judge's comments relate to counsel's skill, they are not prejudicial unless the comments also

---

[4] Although Plaintiff argues that the nature and manner of the court's rulings upon the closing argument objections caused counsel, an experienced attorney, to stumble through the remainder of her argument, the transcript speaks for itself. Counsel continued her argument for more than twenty (20) minutes and was complimented on her oratory by defense counsel. There also seems to be a suggestion in Plaintiff's motion that counsel was so affected by the court's rulings that co-counsel had to make Plaintiff's rebuttal argument to avoid further "outbursts" by the court and prejudice to Plaintiff's case. Counsel fails to explain that she requested, and the court approved, co-counsel arguing Plaintiff's rebuttal closing argument well before any closing statements were made by anyone.

[5] At no time did this judge yell or shout at Plaintiff's counsel. When counsel ignored and argued with the court's rulings, this judge did raise his voice and dealt with counsel in a stern and emphatic manner.

7

reflect on counsel's good faith or integrity. *Id.* (citation omitted). Here, the court's response was based upon Plaintiff's counsel's attempt to ignore the court's ruling and continue the improper argument. The court's response was never directed at Plaintiff, the sufficiency of his case, or the integrity of Plaintiff's counsel. In addition, the court instructed the jury both at the beginning and the end of the trial that the court's statements and rulings should in no way impact the jury's determination of what the verdict should be. Under these circumstances, the court's conduct during closing argument neither demonstrated actual judicial bias nor left an "abiding impression that the judge's remarks . . . projected to the jury an appearance of advocacy or partiality." *Shad*, 799 F.2d at 531 (citation omitted).

### 3. Defense Counsel's Closing Argument

Plaintiff faults the court for permitting defense counsel to reference during his closing argument the "emperor's new clothes" fable. Plaintiff contends this was a "personal jab" at Plaintiff's counsel. Indeed, during closing argument, Plaintiff's counsel objected to defense counsel's reference, stating, "[defense counsel is] impugning opposing counsel." (Trial Tr. (#240) at 3:5-6, April 9, 2009.) Plaintiff alleges the court responded to the objection by stating "words to the effect," "Don't you understand the difference between evidence and a parable? . . . There is wide latitude in closing argument!" (Pl.'s Mot. New Trial (#233) at 3-4 n.3.)

Again, Plaintiff has misrepresented the events that occurred at trial. In contrast to Plaintiff's characterization of the court's response, the court responded to Plaintiff's counsel's objection by stating, "Well, I'll allow the parable, insofar as it refers to argument. This is argument, and I think it's appropriate." (Trial Tr. (#240) at 3:7-9, April 9, 2009.) Further, it is difficult to see how defense counsel's reference to the fable was a personal attack on Plaintiff's counsel. Defense counsel used the fable to argue to the jury that Plaintiff's perception of what the evidence demonstrated was not necessarily indicative of what the evidence actually demonstrated and to encourage the jurors to follow their own recollection of and to make their own inferences

1  from the evidence. Thus, neither the court's conduct in making the ruling nor the substance of the
2  ruling reflected a negative view of the skill, integrity or good faith of Plaintiff's counsel or the
3  court's perception of Plaintiff's case.

**B.  Comments on the Evidence**

5  Next, Plaintiff takes issue with the court's statements to the jury describing the individuals
6  who fled from the area where the police executed the search warrant as "suspects" rather than
7  "subjects" or "unknowns." Plaintiff contends the court's response to his counsel's repeated
8  attempts to classify the individuals running into the barbershop as anything other than suspects
9  "sent an unmistakable message to the jury that all police conduct, including the searching of
10 plaintiff was appropriate. It was not a neutral comment on the evidence; it was an admonition to
11 [Plaintiff's counsel] that there would only be one view of that evidence- the judge's view." (Pl.'s
12 Mot. New Trial (#233) at 7-8.)

13 The court's conduct over which Plaintiff is concerned occurred during Plaintiff's counsel's
14 redirect examination of Sergeant Frazier. (Trial Tr. (#243), April 7, 2009.) During the redirect,
15 Plaintiff's counsel asked numerous questions relating to whether the individuals that ran into the
16 barbershop were suspects. Defense counsel objected, stating, "Your Honor, once again, there's no
17 dispute, and counsel has said there's no dispute, that our officer had a right to search the person. . . .
18 This has nothing to do with whether [Defendant] had his hands in [Plaintiff's] pocket." (*Id.* at
19 16:17-21.) The court responded, "I'm going to sustain the objection. I'm not aware of there being
20 any dispute over the fact that two suspects or people who may have somehow been involved for
21 some reason that caused them to run from the police ran and entered the barbershop. I don't think
22 there's any dispute as to that fact . . . ." (*Id.* at 16:22-17:4.)

23 Plaintiff's counsel responded that whether the fleeing individuals were suspects was, in fact,
24 in dispute. In response, the court stated, "[Plaintiff's counsel], if you're going to make statements
25 like that, that's inappropriate. The fact is the officers have a reasonable ground to go after someone

9

who appears to be running from officers and who may be hiding from them . . . ." (*Id.* at 17:11-16.) After Plaintiff's counsel continued to contend that there was no evidence that the fleeing individuals were running from the police, the court stated, "I'm not going to debate it with you, [Plaintiff's counsel]. The court's ruling is if the officers saw people running from the general direction of the Thomas house and were going and went into the barbershop that the officers had a right and probably a duty to go in and find those individuals." (*Id.* at 17:21-18:1.) When Plaintiff's counsel continued to challenge the court's ruling, the court asked her to move on to her next question.

"Trial courts have broad discretion to comment on the evidence . . . ." *Navellier v. Sletten*, 262 F.3d 923, 942 (9th Cir. 2001) (*citing Quercia v. United States*, 289 U.S. 466, 469 (1933)). "It is within [the judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important . . . [and by expressing] his opinion upon the facts." *Quercia*, 289 U.S. at 469. Nonetheless, the judge's discretion is neither arbitrary nor uncontrolled, and in commenting on the evidence, the judge may not distort or add to the evidence. *Id.* at 470. "[T]he ultimate question is whether the judge has made it clear to the jury that all matters of fact are submitted to their determination." *White v. Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) (citations and internal quotation marks omitted).

Here, the court informed the jury both at the beginning and the end of the trial that when deciding the case, the court's statements and conduct during the trial should not influence the jury's determination of what the verdict should be. Moreover, the court did not distort or add to the evidence. The simple fact is that the fleeing subjects were suspects. Prior to the trial, the Ninth Circuit had ruled that the police officers acted lawfully in entering the barbershop, requiring the occupants to lie on the floor, and then ordering the occupants to exit the barbershop one at a time. *See Davis v. Adamson*, 290 Fed. Appx. 35, 37 (9th Cir. 2008). Likewise, the Circuit Court upheld

Defendant's decision to detain and conduct a pat search of Plaintiff because the officers were unable to determine whether Plaintiff was "the *suspected* armed and dangerous drug dealer [the police] reasonably believed had entered the barbershop only seconds before." *Id.* (emphasis added).

It was undisputed that Thomas, the armed and dangerous drug dealer who the police were pursuing, ran from police to the area of the barbershop with an unidentified young black male, Maxwell, who matched the general descriptions of fifteen (15) young drug dealers who were believed to be associated with Thomas. Although Thomas turned without entering the barbershop, Maxwell ran into the barbershop. Maxwell was one of the two unidentified men who police were attempting to sort out from those who were legitimately within the shop. Thomas was the primary suspect for whom the police had a warrant. Until subsequent investigation determined otherwise, the police had every reason to consider Maxwell a suspect.

Plaintiff argues the court's characterization of the individuals that ran into the shop somehow affected the jury's determination of whether Plaintiff voluntarily consented to the search of his pockets. The only issue before the jury at trial was whether Defendant exceeded the scope of a lawful pat search when he reached into Plaintiff's pockets, and the court fails to see how the characterization of the fleeing individuals in anyway affected the voluntariness of Plaintiff's consent to the search. The propriety of the officers' conduct in displaying their weapons and ordering the occupants of the barbershop to exit the building one at a time, or otherwise treating all of the individuals in the barbershop as suspects was simply not at issue in the trial. Indeed, Defendant did not deny that the events leading up to Defendant's search of Plaintiff occurred largely as Plaintiff characterized them. The court's comments served to focus the jury's attention on the actions of Plaintiff and Defendant and the actual issues before it. Viewed in the appropriate context, the court's conduct was proper and did not prejudice Plaintiff's case.

///

**C. Limiting Plaintiff's Counsel's Questioning**

Plaintiff also contends the court inappropriately limited his counsel's ability to question witnesses in two ways. First, Plaintiff argues the court prevented his counsel from inquiring into certain matters raised by opposing counsel. Second, Plaintiff argues the court erroneously prevented his counsel from asking a witness leading questions.

**1.     The Internal Investigation by the Reno Police Department**

During his testimony, Defendant discussed the negative consequences of going beyond a lawful search. In particular, Defendant noted that by exceeding the scope of a lawful search Defendant could open himself up to criminal or civil liability, lose professional credibility, be unable to testify effectively in future cases thereby making him ineffective as a police officer, and risk the suppression of any evidence obtained as a result of a search.

Based on these statements, Plaintiff now contends defense counsel "argued vigorously that [Defendant] would lose his job if he were found liable. This was a sympathy argument . . . [that] appealed to the jury's pity and sympathy. Counsel argued: 'This police officer puts his life on the line and this is the thanks he gets - a lawsuit against him.'" (Pl.'s Mot. New Trial (#233) at 8.) Plaintiff argues the court prevented Plaintiff's counsel from inquiring into the "basis for the officer's appeal to the jury's sympathy." (*Id.* at 9.)

Once again Plaintiff's characterization of the events at trial do not accurately portray what took place. At the trial, Defendant never stated he would lose his job if he lost the suit. Instead, Defendant's comments concerned the effect of an adverse judgment on his ability to effectively be a police officer and demonstrated his recognition of the serious effects of committing an unlawful search.

In arguing that the court improperly prevented Plaintiff's counsel from asking about the police department's inquiry into Defendant's conduct, Plaintiff continues to challenge the conduct of the Reno Police Department, which was not at issue in the trial. For example, Plaintiff's motion

12

states, "What would have been clear is that [Defendant's] police superiors considered the allegations made by Mr. Spears so unimportant and ridiculous they had not bothered even to inquire once of the officer about them during the near-six year pendency of this lawsuit." (*Id.* at 10-11.) As the conduct of the police department was not at issue, this line of argument is irrelevant and improper, and was likely to confuse the jury. In light of the evidence's strained relationship to the issues before the jury, it was well within the court's discretion to limit Plaintiff's counsel's inquiry into this subject.[6]

### 2. Leading Questions

Prior to trial, the parties apparently agreed that Plaintiff's counsel could question Police Sergeant Walter Frazier through leading questions in Plaintiff's case in chief. This was not presented to the court as a stipulation and the court never ruled upon it. At trial, Plaintiff's counsel called Sergeant Frazier and proceeded to ask him leading questions in a seriatim manner. At a side bar conference during his testimony, the court alerted Plaintiff's counsel that it was concerned about the leading questions and that Frazier was not a hostile witness. As such, the court instructed Plaintiff's counsel that until Sergeant Frazier appeared hostile, Plaintiff's counsel should refrain from asking him further leading questions. Plaintiff's counsel agreed.

Pursuant to Federal Rule of Evidence 611(c), the district court has broad discretion in determining whether to allow leading questions. *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989) (citations omitted). To warrant a new trial on the basis of a leading questions evidentiary ruling, the moving party must show "the judge's action . . . amounted to, or contributed to, the denial of a fair trial." *Id.* (citations omitted). Here, Plaintiff's counsel agreed not to ask additional leading questions and has made no showing that leading questions were needed or that

---

[6]In a footnote, Plaintiff asserts that the court prevented Plaintiff from inquiring into previous citizen complaints brought against Defendant. Well before trial, the parties apparently agreed that Plaintiff's counsel would not present such evidence. At no time during the trial did Plaintiff's counsel attempt to present such evidence.

the presentation of Plaintiff's evidence was somehow prejudiced by requiring direct questions. There simply was nothing shown that would have warranted leading questions, let alone such questions in a seriatim style.

### D. Post-Verdict Comments

Finally, Plaintiff challenges comments the court made following the return of the jury's verdict. In particular, the court thanked the jury for its service and, in the presence of the jury, complimented the attorneys. With regard to Plaintiff's counsel the court stated, "[Plaintiff's counsel], you kind of got on my nerves a couple of times when you were doing some of your impeachment,[7] but – and I apologize if I came on too strong, but at the same time I would say I saw some excellent lawyering on behalf of every attorney in this courtroom. Plaintiff's counsel did an excellent job. They were prepared. They presented their case." (Trial Tr. (#241) at 3:20-4:1, April 10, 2009.)

The purpose for which Plaintiff now challenges the court's comments is not clear. Plaintiff appears to argue that the court's statement evidences an acknowledgment of wrongdoing. However, as discussed above, none of the alleged conduct by the court was improper or prejudiced Plaintiff's case in anyway. The court intended the comments to thank and compliment counsel for their hard work during the trial. The comments in no way indicated that the court's rulings were inaccurate or that its conduct was otherwise prejudicial.

### III. Conclusion

After presiding over this trial and the underlying lawsuit for more than five years and thoroughly reviewing the trial transcript and the parties' briefs, it is apparent to the court that what it has before it are the arguments of a party and his counsel who are upset with the outcome of an ill-fated and unsuccessful lawsuit for misplaced reasons. With this final motion, they have chosen

---

[7]This referred to the cross-examination of Defendant when Plaintiff's counsel was improperly attempting to impeach him with admissions obtained in discovery that were either confusing or not inconsistent with his testimony.

to express their dissatisfaction with the jury's verdict by challenging the conduct of the court during trial. However, as discussed above, Plaintiff has failed to show judicial error or conduct that would warrant a new trial. Accordingly, the court will deny Plaintiff's Motion for a New Trial (#233).

IT IS SO ORDERED.

DATED this 18th day of June, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE